LaShawn D. Fitch
#893022 #423116d
SWSP
215 S.Burlington Road
Bridgeton, New Jersey 08302
Presently Confined

RECEIVED

JUL 1 0 2025

AT 8:30_____M
CLERK U.S. DISTRICT COURT - D:U

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LASHAWN D. FITCH
  Plaintiff

v.

JEFREY CROTHERS, Administrator,
in his official and individual capacity;
DERRICK BODTMANN, Assistant
Superintendent in his official and
individual capacity;
OFFICER MERTEN, Custody officer,
in his official and individual capacity
  Defendants.

Civil Case No. 2:25-cv-00753-MAS-JBD

### CIVIL ACTION

### AMENDED COMPLAINT

### JURY TRIAL DEMAND
### COMPLAINT FOR MONEY DAMAGES AND INJUNCTION

Plaintiff, LaShawn D. Fitch ("Plaintiff"), by and through pro se filings,

asserts this action against defendants Jeffrey Crothers ("Administrator"), Derrick

Bodtmann ("Assistant Superintendent"), and Officer Merten ("Custody

officer")("Collectively Defendants") for violations of the First Amendment and

[1]

Fourteenth Amendment to the United States Constitution, the New Jersey Constitution and various Tort claims.

## JURISDICTION AND VENUE

1. Plaintiff brings this lawsuit pursuant to 42 U.S.C. 1983. This Court has jurisdiction under 28 U.S.C. 1331 & 1343. Plaintiff also seeks a declatory judgment pursuant to 28 U.S.C. 2201.

2. The District of New Jersey is an appropriate venue under 28 U.S.C. 1391(b) (2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

3. At all times mentioned herein, plaintiff was in custody of the New Jersey Department of Corrections ("NJDOC") and confined at New Jersey State Prison ("NJSP").

4. At all times mentioned herein, defendant Jeffrey Crothers is a resident of New Jersey employed by New Jersey Department of Corrections ("NJDOC") who is the acting Administrator. His duties include Supervising NJSP's remedy system, which include responding to grievances or assigning a designee to respond to the same.

5. At all times mentioned herein, defendant Derrick Bodtmann is a resident of New Jersey employed by New Jersey Department of Corrections ("NJDOC")

[2]

who is the Assistant Superintendent. His duties include Supervising and implementing the Legal Access Plan in New Jersey State Prison ("NJSP"). Which includes supervising custody officers that are stationed at the Law Library and ILA offices.

6. At all times mentioned herein, defendant Officer Merten is a resident of the State of New Jersey employed by New Jersey Department of Corrections ("NJDOC") who is a Custody officer stationed on the first floor of the Donald Bourne School ("D.B. School") within the New Jersey State Prison. His duties include securing the law library, I.L.A. offices and the reading library.

## FACTUAL BACKGROUND

7. Plaintiff was hired as an Inmate Legal Association ("ILA") paralegal, May 2023. June of 2023, plaintiff was granted Closed Custody Access ("CCU"). With CCU access, plaintiff was able to assist incarcerated persons in Restrictive Housing Unit ("RHU"), Maximum Custody Unit ("MCU"), Protective Custody ("PC") and Temporary Housing ("TAH"). This also included representing incarcerated individuals in Court Line when said inmate commits an institutional infraction.

8. In October of 2023, plaintiff was featured in an article published by the New Jersey Monitor speaking about the ills of RHU within NJSP. In January 2024, plaintiff's CCU access was rescinded by defendant Derrick Bodtmann. Plaintiff

[3]

then wrote a grievance about his CCU access being rescinded because of discriminatory reasons. That being, talking to the media about NJSP's RHU.

9. In February 2024, plaintiff wrote a letter to Michael Vomacka, Deputy Attorney General about his CCU access among other things.

10. In March of 2024, defendant Bodtmann came to ILA Office #119. Plaintiff inquired about his CCU status. Defendant told plaintiff that the officers were not too fond of the article and he wanted to limit the number of paralegals with CCU Access. Plaintiff told defendant that he feels he is be discriminated upon. Defendant's gestures hinted towards that it may be the plaintiff. Then replied, you might be right. The following day, Jibreel Vaughn, ILA paralegal was granted CCU access after plaintiff was told that CCU access would be limited.

11. In this same month, defendant Merten falsified reports in the form of institutional infractions on plaintiff's co-worker, Juan Turner. Defendant Merten threatened this inmate with physical violence and hurled racial epithets at Mr. Turner. Plaintiff provided a statement on behalf of Mr. Turner, which defendant Merten told plaintiff, "he was now on his shit list." Mr. Turner's charges were downgraded, yet he never regained employment.

12. April 3, 2024, plaintiff had a meeting with custody staff and Defendant Bodtmann about legal access. Plaintiff addressed his CCU status and the unprofessional behaviors of defendant Merten. Plaintiff expressed that defendant

[4]

Merten is targeting him because of the statement he made on behalf of Juan Turner. Plaintiff was told by defendant Bodtmann to resubmit his CCU access application. Plaintiff submitted numerous CCU applications to no avail. Plaintiff also informed defendant Bodtmann that defendant Merten denied ILA paralegals, including plaintiff, access to the law library, printed and photocopied materials. Plaintiff's job detail entails access to the Law Library, printed and photocopied materials.

13. August of 2024, defendant Bodtmann visited ILA office #119 to speak with plaintiff and other ILA paralegals on various complaints about defendant Merten. Plaintiff told defendant Bodtmann that defendant Merten has been recording them with his body camera. Bodtmann said that he would look into it. Plaintiff also asked about his CCU application. Bodtmann said they approved someone, yet he didn't know who. Co-Worker Allan Mattock, was granted CCU not plaintiff. At this meeting, Bodtmann informed plaintiff that he took plaintiff's CCU access.

14. On September 11, 2024, plaintiff, Allan Mattocks, Peter Leonce, Adonis Thomas and James Martin were in I.L.A. office room #119 discussing the presidential debate that took place September 10, 2024. All of said individuals including plaintiff are members of the Inmate Legal Association Inc. ("ILA"). See. Exhibits (Declaration of: Allan Mattock, Adonis Thomas and James Martin)

[5]

15. These discussions took place in ILA office #119 in the Donald Bourne School (D.B. School) between the hours of 12:30-3:00 pm. During this discussion, the door was ajared were defendant, Merten was earshot of the discussion.

16. Moments later, defendant Merten entered the office along with Sgt. Sessions. Defendant asked the entire office to be quiet while staring and smirking at plaintiff.

17. The following afternoon, September 12, 2024, defendant Merten told plaintiff in passing, "he didn't want to hear any of that democratic Kamala bull shit today or I'm writing charges." He also stated, "that black girl does not know how to run a country." Plaintiff ignored defendant and made his way to office #118.

18. During the same time frame, defendant sent incarcerated person ("IP") Gary Derroses into plaintiff's office to inform him that defendant Merten did not have a memo for the evening ILA class. Mr. Derroses is a law library paralegal who is a older white man. Officer Merten gives Mr. Derroses preferable treatment. He gives this same treatment to Mark Kennon, who also is a white law library paralegal. These inmates are similarly situated to plaintiff. Although plaintiff is an ILA paralegal, he, Derroses and Kennon have the same job functions, yet only the white law library paralegals are allowed to access the law library, printed materials, photocopied materials, legal phone calls. In an attempt to provide defendant with a copy of the signed memo from Administration, defendant stated to plaintiff, "I don't

[6]

take memos from I.L.A. inmates". Plaintiff left office 118 to go to office 119, in passing defendant whispered, "all you want to do is run to Dr. Glover, he can't help you." "Play with me and you will end up like Turner."

19. Defendant was referencing Juan Turner, former ILA paralegal whom defendant fired after providing false charges in March of 2024. Also, Dr. Jesse Glover is the Supervisor of Education and the ILA's liaison, at NJSP.

20. Dr. Glover made his way over to defendant to discuss what took place. After speaking with defendant, Dr. Glover came to room 119 to address plaintiff and other ILA members. During this time, the door was slightly open were defendant could hear what is being said. At this time, plaintiff told Dr. Glover, "officer Merten is just mad because we are talking about Donald Trump's performance at the presidential debate." Plaintiff continued, "defendant is a staunch Trump supporter who outwardly expresses his views which are adverse to mine and he loves expressing his disdain for me and all ILA members. This is not the first time that officer Merten has tried to silence me for speaking politics."

21. Peter Leonce said, "I feel like officer Merten is targeting me and Fitch (plaintiff) -- and the entire ILA for that matter." Plaintiff continued then stated, "it is not fair that he gets to express his views but when I express mine he calls a Sgt. and lies about how loud the commotion is in order to get me to stop talking." See. Exhibit. (Declaration of Peter Leonce)

[7]

22. Dr. Glover informed plaintiff that defendant did have a copy of the memorandum yet, he wanted to give plaintiff a hard time. Plaintiff told Dr. Glover, "he has been targeting me since I provided a statement on the behalf of Juan Turner and complained to the Administration and AG's office about him."

23. When plaintiff returned to his unit, he was visited by Sgt. Early at approximately 3:15 pm. Sgt. Early asked plaintiff, "what is the beef you have with defendant?" Plaintiff told Sgt. Early, "I have no beef with defendant, yet he didn't like me expressing my political views." Sgt. Early told plaintiff not to attend I.L.A. at 4:30 pm. Sgt. Early gave plaintiff the impression that if he attended I.L.A. it would affect plaintiff negatively. Sgt. Early stated this was out of respect for defendant, Officer Merten.

24. The following day, September 13, 2024, plaintiff went back to work with no incident from defendant. Plaintiff did notice that when walking pass defendant, he had his body camera activated recording plaintiff in a harassing manner. Monday, September 16, 2024, plaintiff attempted to go to work before being stopped by Officer Grier. Officer Grier told plaintiff he could not enter because defendant fired him.

25. Officer Grier did not know the reason. He told plaintiff that he also fired co-worker, Peter Leonce. Plaintiff asked for the area supervisor, which was Sgt. Perez, who spoke with defendant about the matter. According to Sgt. Perez,

[8]

plaintiff and co-worker Peter Leonce was fired on September 11, 2024 because they "were arguing with one another and was about to fight." Plaintiff told Sgt. Perez that is a lie. He told Sgt. Perez, "if I was fired September 11, 2024, than why was I allowed to go to work the 12th and the 13th around defendant and he did not say anything." Sgt. Perez said he was not present so he did not know. He just reiterated what defendant told him. That is, plaintiff and Leonce were loud and disruptive -- face-to-face about to fight.

26. That afternoon plaintiff asked Lt. Reardon, if it was still okay to continue his evening ILA sessions even though he was fired as an ILA paralegal. Lt. Reardon said, "yes -- Officer Merten cannot stop your access."

27. Later that evening, plaintiff spoke with Sgt. Sessions who also stated that it was okay for plaintiff to attend his evening I.L.A. course. However, out of fear of being retaliated against by defendant Merten, plaintiff did not attend his evening I.L.A. session 9/16/24, 9/17/24, 9/18/24 and 9/19/24.

28. Plaintiff went to his evening ILA class at 4:30 on September 23, 2024. When plaintiff tried to check in with defendant Merten, he said, "he does not have a memo for [plaintiff] to be here today." Plaintiff replied, "Lt. Reardon and Sgt. Sessions said that I can attend."

29. Defendant said he does not care what his superiors told plaintiff. Plaintiff than asked, "how are the other ILA members in the office and they are on the same

[9]

memo you claim not to have." Defendant replied again, "I don't have no memo --
to bad." Plaintiff left the school area without incident.

30. When plaintiff returned to his unit he spoke with Lt. Bell about defendant
and his constant retaliatory and discriminative behavior towards plaintiff and
attempts to deny his access to the courts. Plaintiff told Lt. Bell that Lt. Reardon and
Sgt. Session told defendant that plaintiff is good to go to ILA at 4:30. Lt. Bell
returned to plaintiff's unit at approximately 7:35pm and told plaintiff that he had to
stop defendant Merten from writing institutional infractions on plaintiff." Plaintiff
responded, "this is what I am talking about. I did nothing that would warrant
institutional infractions -- all I did was ask why I am not allowed to enter the ILA
office with no memo but you allowed others?" Lt. Bell said he told officer Merten
to cut his shit, but you are good to go."

31. Plaintiff states that whenever he saw defendant, whether inside the school
area or not, he would turn his body camera on to intimidate him.

32. In October of 2024, defendant Bodtmann responded to a grievance
informing plaintiff that he would be reinstated as an ILA paralegal, but he would
not be getting his CCU access back. Plaintiff saw defendant Bodtmann in passing
and he reassured plaintiff that he would get his job back because he watched the
camera and did not see what Merten wrote on the lay-in slip. He added, that he
knew it was over politics and that is not a reason to fire someone.

**[10]**

33. On December 3, 2024 Mercer County Sheriffs served Dan Williams for an unrelated complaint filed by plaintiff.(LaShawn Fitch v. Dan Williams et. al., Docket No. MER L-001862-24) On December 4, 2024, plaintiff was denied by Classification for his ILA paralegal job. In the lawsuit, defendant, Bodtmann was named as a non-party who is subject to joinder pursuant to N.J.Ct.R. 4:29-1(b) of potential liability. Defendant Bodtmann made the decision not to reinstate me. It was also Bodtmann who initiated the prison transfer.

34. At or around December 11, 2024, plaintiff went before the Classification Committee for a P.C.C. hearing. Defendant Bodtmann was leading the hearing. Plaintiff asked, "why did his job get denied?" Defendant Bodtmann told plaintiff, "he changed his mind." At this time, Bodtmann was aware of the complaint filed against Dan Williams.

35. At or around December 20, 2024 defendant Jeffrey Crothers spoke with plaintiff about the failure to address the many grievances filed. Defendant told plaintiff, "he did not know why the job was not reinstated, but he would return, January 6, 2025." December 31, 2024, plaintiff was abruptly transferred to South Woods State Prison ("SWSP").

## ADMINSTRATIVE REMEDY

36. Plaintiff has exhausted all administrative remedies before bringing this suit. Yet, Defendant Jeffrey Crothers did not respond to any grievances pertaining to this matter in a timely fashion. All grievances were answered almost two months after it as written. Plaintiff has satisfied the PLRA.

## FIRST CAUSE OF ACTION

THE DEFENDANT RETALIATED AGAINST PLAINTIFF FOR PROVIDING A STATEMENT ON BEHALF OF JUAN TURNER AFTER DEFENDANT FALSIFIED DOCUMENTS THAT LED TO HIM GETTING FIRED, WHICH ULTIMATELY LED TO PLAINTIFF GETTING FIRED. IN VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION. (against officer Merten)

37. Plaintiff repeats and realleges the foregoing paragraphs as if more fully set forth herein.

38. Plaintiff reported officer Merten's conduct to Dr. Jesse Glover (Supervisor of Education), defendant Derrick Bodtmann (Administration) and the AG, Michael Vomacka. All of which pointed to defendant creating a hostile work environment for plaintiff and other ILA paralegals. This also came in a form of plaintiff writing grievances against defendant. Plaintiff also provided a statement on behalf of Juan Turner refuting the report of defendant in March of 2024. Since that date defendant antagonized plaintiff in order to fire him. Defendant threatened plaintiff that he would end up like Turner because he provided unfavorable

[12]

statement against him. Which directly led to defendant falsifying documents on September 11, 2024, in order to get plaintiff fired. That being, plaintiff and Peter Leone was being loud and disruptive.

39. Due to the defendant's unlawful acts against the plaintiff, he suffered and continues to suffer, including but not limited to, lost wages, emotional trauma, future pain and suffering. Which plaintiff is entitled to relief.

## SECOND CAUSE OF ACTION

THE DEFENDANT VIOLATED PLAINTIFFS RIGHT TO FREEDOM OF SPEECH AND FREEDOM OF EXPRESSION IN VIOLATION OF THE UNITED STATES CONSTITUTION, FIRST AMENDMENT. (against officer Merten)

40. Plaintiff repeats and realleges the foregoing paragraphs as if more fully set forth herein.

41. Defendant ultimately fired plaintiff for speaking against Donald Trump and expressing his political views while he and other NJSP ILA paralegals employees discussed the presidential debate. In order to silence plaintiff, he lied to Sgt. Sessions that plaintiff was being loud and disruptive. Which directly led to the plaintiff being fired.

42. Due to defendant's unlawful acts caused plaintiff to suffer, including but not limited to, lost wages, emotional trauma, future pain and suffering.

[13]

## THIRD CAUSE OF ACTION

DEFENDANT DISCRIMINATED AGAINST PLAINTIFF BOTH RACIALLY AND FOR BEING A ILA PARALEGAL WHICH IS IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (against Officer Merten)

43. Plaintiff repeats and realleges the foregoing paragraphs as if more fully set forth herein.

44. Defendant discriminated against plaintiff as he made references towards plaintiff's ethnicity, race and compared him to Kamla Harris as being unfit because of race. Plaintiff and all I.L.A. paralegals are African-Americans. Defendant always speaks to plaintiff and other ILA members in a hostile manner, while speaking to law library paralegals with pleasantries and respect. Defendant also restricted plaintiffs and other ILA paralegals from basic necessities such as the law library, making legal phone calls and obtaining legal copies. All of which plaintiff is permitted use while performing his job functions. Yet, defendant allows all these privileges and freedoms to law library paralegals.

45. Due to defendant unlawful acts, plaintiff was caused to suffer, including but not limited to, lost wages, emotional trauma, future pain and suffering where plaintiff is entitled to monetary relief. As direct and proximate results of defendant's actions, plaintiff was deprived of rights, privileges secured to him under the Federal Constitution and laws of the state of New Jersey.

## FOURTH CAUSE OF ACTION

DEFENDANT RETALIATED AGAINST PLAINTIFF WHICH IS A VIOLATION OF THE FIRST AMENDMENT TO THE UNTIED STATES CONSTITUTION.(Against defendant Derrick Bodtmann)

46. Plaintiff repeats and realleges the foregoing paragraphs as if more fully set forth herein.

47. Defendant rescinded plaintiff's CCU access for speaking with reporters about RHU units within New Jersey State Prison. Defendant denied plaintiff's job December 4, 2024 because of the complaint he lodged against Dan Williams (Librarian). He then transferred plaintiff to another facility three weeks later.

48. Due to defendant unlawful acts, plaintiff was caused to suffer, including but not limited to, lost wages, emotional trauma, future pain and suffering where plaintiff is entitled to monetary relief. As direct and proximate results of defendant's actions, plaintiff was deprived of rights, privileges secured to him under the Federal Constitution and laws of the state of New Jersey.

## FIFTH CAUSE OF ACTION

DEFENDANTS FAILED TO ANSWER ANY GRIEVANCES AND APPEAL OF GRIEVANCES INVOLVING THIS MATTER IN AN ATTEMPT TO INTERFERE WITH ANY FUTURE LITIGATION. WHICH IS A VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT. (against Jeffrey Crothers and Derrick Bodtmann)

49. Plaintiff repeats and realleges the foregoing paragraphs as if more fully set forth herein.

[15]

50. Defendants ignored all grievances and appeals for this matter. All Grievances became overdue and took almost two months to respond. Meanwhile other grievances were being answered not related to this matter.

51. Due to defendant unlawful acts, plaintiff was caused to suffer, including but not limited to, lost wages, emotional trauma, future pain and suffering where plaintiff is entitled to monetary relief. As direct and proximate results of defendant's actions, plaintiff was deprived of rights, privileges secured to him under the Federal Constitution and laws of the state of New Jersey.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands in the amount of $100,000 against defendant as follows:

a. compensatory damages;

b. punitive damages;

c. attorney's fees;

d. interest; and for such other relief as the Court deems just and proper.

## DEMAND TO PRESERVE EVIDENCE

1. All defendants are hereby and demanded to preserve all physical and electronic information pertaining in any way to plaintiff's causes of action and/or prayer for relief. Which include camera footage from ILA office #119 on

[16]

September 11, 2024. Camera Footage from 1st floor D.B. school September 23, 2024. Officer Merten body-camera from August through September 2024.

2. Failure to do so will result in separate claims for spoliation of evidence and/or for appropriate adverse inferences.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## NOTICE OF OTHER ACTIONS

Pursuant to L. Civ. R. 11.2, the undersigned hereby certifies that the matter in controversy is not the subject of any other action or proceeding in any court or of a pending arbitration proceeding.

## CERTIFICATION OF NON-ARBITRABILITY

Pursuant to L. Civ. R. 210.1, the undersigned hereby certifies that this action is based on an alleged violation of a right secured by the Constitution of The United States, and thus not eligible for arbitration.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby requests designated counsel for the suit. Plaintiff attaches separate motion and certification for counsel.

[17]

/s/ **LASHAWN D. FITCH**
  LaShawn D. Fitch, plaintiff, pro se
  South Woods State Prison
  215. S. Burlington Road
  Bridgeton, New Jersey 08302

[18]