UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON

| | |
|---|---|
| LASHAWN D. FITCH,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY CROTHERS, et al.,<br><br>Defendants. | Hon. Michael A. Shipp, U.S.D.J.<br>Hon. J. Brendan Day, U.S.M.J.<br><br>Docket No. 3:25-cv-00753-MAS-JBD<br><br>Civil Action |

**BRIEF IN SUPPORT OF THE MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF DEFENDANTS MERTEN & BODTMANN**

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625
*Attorney for Defendants*
*Merten & Bodtmann*

Angelo Cifelli
Deputy Attorney General
On the Brief

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ....................2

STANDARDS OF REVIEW ....................3

Argument ....................5

Point I – PLAINTIFF'S CIVIL RIGHTS CLAIMS FAIL AS A MATTER OF LAW BECAUSE THEY ARE NOT COGNIZABLE AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ....................5

Point II – PLAINTIFF HAS FAILED TO STATE A PLAUSIBLE CLAIM THAT DEFENDANTS MERTEN AND BODTMANN RETALIATED AGAINST HIM ....................7

A. Plaintiff has not suffered an adverse action from Defendant Merten ....................8

B. Plaintiff has not suffered an adverse action from Defendant Bodtmann ....................10

C. Even if Plaintiff suffered an adverse action, there is no causal link ....................11

Point III – PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT ....................16

Point IV – COUNT FIVE FAILS TO STATE A CLAIM UNDER THE FIRST OR FOURTEENTH AMENDMENT ....................21

CONCLUSION ....................22

# TABLE OF AUTHORITIES

**Statutes**

42 U.S.C. § 1983 ........................................................................................ 1, 5, 6, 7, 9

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1, 3, 4, 5

**Cases**

*Allah v. Seiverling,* 229 F.3d 220 (3d Cir. 2000) ........................................................ 8, 11

*Andreoli v. Gates* (3d Cir. 2007) ........................................................................ 13

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................. 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 3, 4, 5, 20

*Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168 (3d Cir. 1978) ................................. 5

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006) ................................. 5

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) ................................... 4

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) ......................................... 13

*Collazo v. Rozum*, 646 F. App'x 274 (3d Cir. 2016) ............................................. 11

*Deejaiz LLC v. Twp. of Franklin*, 2025 U.S. Dist. LEXIS 169473 (D.N.J. 2025) ....... 18, 19, 20,21

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir. 2000) ............................. 13

*Heleva v. Kramer*, 214 F. App'x 244 (3d Cir. 2007) ............................................. 22

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018) ........................................................................................ 20

*Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977) ............................ 21

*Kasper v. Cnty. of Bucks*, 514 F. App'x 210 (3d Cir. 2013) ................................... 17

*Kaul v. Christie*, 372 F. Supp. 3d 206 (D.N.J. 2019)....................17, 19, 21

*Krouse v. Am. Sterilizer Co.*, 126 F.3d 494 (3d Cir. 1997)....................13

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217 (3d Cir. 2007)....................13

*Martin v. Campus,* 2025 U.S. Dist. LEXIS 145763, (D.N.J. 2025) ....................9

*Massey v. Helman*, 259 F.3d 641 (7th Cir. 2001)....................22

*McKee v. Hart*, 436 F.3d 165 (3d Cir. 2006)....................8

*Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).*....................7

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir. 1997) ....................5

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ....................18

*Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001)....................8, 10

*Richmond v. ONEOK, In*c. (10th Cir.)....................13

*Royster v. New Jersey State Police*, 110 A.3d 934 (N.J. App. Div. 2015) ....................6

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ....................4

*Shaner v. Synthes*, 204 F.3d 494 (3d Cir. 2000) ....................12

*Simonton v. Tennis*, 437 F. App'x 60 (3d Cir. 2011)....................21

*Smart v. Cty. of Gloucester,* 681 F. Supp. 3d 306 (D.N.J. 2023)....................12,14

*Soto v. New Jersey*, 2020 U.S. Dist. LEXIS 87657 (D.N.J. 2020) ....................11

*Startzell v. City of Philadelphia*, 533 F.3d 183 (3d Cir. 2008)....................18

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)....................4

*Thomas v. Independence Twp.*, 463 F.3d 285 (3d Cir. 2006) ....................7

*Vamsidhar Reddy Vurimindi v. City of Philadelphia*, 521 F. App'x 62 (3d Cir. 2013) ....................18

*Washington v. Davi*s, 426 U.S. 229 (1976)....................17, 19, 21

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)....................6

*Woodson v. Scott Paper Co.*, 109 F.3d 913 (3d Cir. 1997) ....................13

*Young v. Kann*, 926 F.2d 1396 (3d Cir. 1991)....................20

## PRELIMINARY STATEMENT

Plaintiff Lashawn Fitch ("Plaintiff") brings this action against Jeffrey Crothers, Derrick Bodtmann, and Robert Merten (pled as Officer Merten), hereby referenced as ("Defendants"). Plaintiff's Complaint attempts to assert claims for retaliation, violations of freedom of speech, discrimination, and a failure to answer grievances arising from multiple instances regarding Plaintiff's role as an Inmate Legal Association ("ILA") paralegal, Plaintiff's attendance at his ILA classes, and his interactions with several correctional officers. Plaintiff was released from South Woods State Prison ("SWSP") on December 4, 2025, a New Jersey Department of Corrections ("NJDOC") facility, where he served eleven years for multiple crimes including unlawful possession of weapons, murder-during crime/flight from crime, robbery, possession of firearms for an unlawful purpose, and conspiracy to commit robbery or carjacking.

For the following reasons, Plaintiff's claims against Defendants should be dismissed with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

First, Plaintiff's claims are not cognizable against Defendants in their official capacities as they are not "persons" subject to 42 U.S.C. § 1983 claims. Second, Plaintiff fails to state a plausible claim that Defendants Merten and Bodtmann retaliated against him. Third, Plaintiff fails to state a claim under the Equal

Protection Clause of the Fourteenth Amendment. Lastly, Count Five fails to state a claim under the First or Fourteenth Amendments.

Defendants Merten and Bodtmann move to dismiss the Amended Complaint.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff filed the Complaint in this matter on January 27, 2025, in U.S. District Court, District of New Jersey, Trenton. *See* Complaint, (ECF No. 1). An Amended Complaint was filed on July 10, 2025. *See* Amended Complaint, (ECF No. 5). Count One of Plaintiff's Amended Complaint states that Defendant Merten retaliated against Plaintiff for providing a statement on behalf of Juan Turner after Defendant Merten falsified documents that led to Turner getting fired, which ultimately led to Plaintiff getting fired in violation of the First Amendment to the United States Constitution. *See* Amended Complaint, (ECF No. 5) at 12.

Count Two of Plaintiff's Amended Complaint states that Defendant Merten violated Plaintiff's right to freedom of speech and freedom of expression in violation of the United States Constitution. *See* Amended Complaint, (ECF No. 5) at 13.

Count Three of Plaintiff's Amended Complaint alleges Defendant Merten discriminated against Plaintiff both racially and for being an ILA paralegal, which is in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See* Amended Complaint, (ECF No. 5) at 14.

Count Four alleges Defendant Bodtmann retaliated against Plaintiff which is a violation of the First Amendment to the United States Constitution. *See* Amended Complaint (ECF No. 5) at 15.

Count Five of Plaintiff's Amended Complaint alleges Defendants Crothers and Bodtmann failed to answer any grievances and appeal of grievances involving this matter in an attempt to interfere with any future litigation which is a violation of the First and Fourteenth Amendments. *See* Amended Complaint (ECF No. 5) at 15.

Plaintiff seeks compensatory and punitive damages along with attorney's fees and interest. Defendants Merten and Bodtmann move to dismiss the Amended Complaint.

## **STANDARDS OF REVIEW**

This motion is brought under Fed. R. Civ. P. 12(b)(6).

### **A. Motion to Dismiss for Failure to State a Claim Pursuant R. 12(b)(6).**

Federal Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Motion to Dismiss a Complaint on the pleadings, under Fed. R. Civ. P. 12(b)(6) should be granted if the Complaint, on its face, does not contain sufficient factual matter to indicate that a claim for relief is "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). This "plausibility standard" does not require Plaintiff to establish a probability of liability,

only more than a mere possibility. *Id.* (citing *Twombly*, 550 U.S. at 556-57, 570). This analysis requires the Court to "draw upon its judicial experience and common sense …" in making this determination, and to consider the Complaint as a whole, and in context. *Id*. at 679.

Additionally, to survive a Motion to Dismiss, a complaint must contain sufficient factual matter, on its face, accepted as true, to state a claim to relief. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). If no set of proved facts could show Defendants' liability, Plaintiffs' claims must be dismissed. *Id.; see also Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir. 1997) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions...'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1429-30).

A motion under Fed. R. Civ. P. 12(b)(6) must use the words and exhibits provided in Plaintiffs' Complaint and pleadings. However, and without converting the motion into one for summary judgment, the Court may also consider: 1) any materials that may be incorporated by reference into the complaint 2) any materials that are integral to the complaint and 3) any materials for which a judge may take judicial notice. *See Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168 (3d Cir. 1978); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 264 (3d Cir. 2006).

## LEGAL ARGUMENT

## POINT I

### PLAINTIFF'S CIVIL RIGHTS CLAIMS FAIL AS A MATTER OF LAW BECAUSE THEY ARE NOT COGNIZABLE AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES.

To the extent Plaintiff is asserting federal civil rights claims under 42 U.S.C. § 1983 against Defendants, these claims are not cognizable against the Defendants in their official capacities because they are not "persons" amenable to suit under § 1983.

In relevant part, § 1983 provides as follows:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity ,or other proper proceeding for redress[.]

Under § 1983, Defendants, or in this case, "officials acting in their official capacities" are not "persons" within the meaning of the statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 59, 71 (1988). Courts applying § 1983 have interpreted the word "person" in this manner is because, under the Eleventh Amendment, it has been "long recognized that an essential and fundamental aspect of sovereignty is freedom from suit by private citizens for money judgments absent the State's consent." *Royster v. New Jersey State Police*, 110 A.3d 934, 941 (N.J. Super. Ct. App. Div. 2015).

With respect to claims against state officials acting in their official capacities, they too are not "persons" within the meaning of § 1983. Employees acting in their official capacities are not "persons" under § 1983 because a "suit against [a] state official in his or her official capacity is suit not against official, but rather against official's office; as such, suit is no different from one against state itself." *Will*, 491 U.S. at 71.

Here, Plaintiff's Amended Complaint asserts claims against Defendants in their official capacities. *See* (ECF No. 5) at 1. As the above-cited and well-settled authority makes clear, however, such claims are not cognizable against the Moving Defendants because they are not "persons" amenable to suit under § 1983. Accordingly, any and all federal civil rights claims asserted against Defendants in their official capacities should be dismissed with prejudice as a matter of law.

## POINT II

## PLAINTIFF HAS FAILED TO STATE A PLAUSIBLE CLAIM THAT DEFENDANTS MERTEN AND BODTMANN RETALIATED AGAINST HIM

To state a claim for First Amendment retaliation, a plaintiff must plead facts indicating that he engaged in constitutionally protected activity, that he suffered retaliatory action "sufficient to deter a person of ordinary firmness from exercising constitutional rights," and a causal link between the protected conduct and the retaliatory act. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). For the purposes of this motion, Defendants do not contest that Plaintiff engaged in constitutionally protected conduct when he alleges he spoke with reporters about an article (ECF No. 5) at 3, when he made a statement on behalf of another inmate (ECF No. 5) at 5, or when he filed an unrelated lawsuit. (ECF No. 5) at 11. Plaintiff has not suffered an adverse action from Defendant Merten or Bodtmann and even if Plaintiff had

suffered an adverse action, there is no causal link between the adverse action and the protected conduct.

### A. PLAINTIFF HAS NOT SUFFERED AN ADVERSE ACTION FROM DEFENDANT MERTEN.

A Plaintiff has suffered from a retaliatory act only when he "suffered some 'adverse action' at the hands of prison officials." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). Such adverse action must be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Id*. In other words, it must be more than "de minimis." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006).

Plaintiff's factual allegations against Defendant Merten includes: Defendant Merten telling Plaintiff, "He was now on his shit list" (ECF No. 5) at 4; Defendant Merten saying various statements to Plaintiff in passing such as, "He didn't want to hear any of that democratic Kamala bull shit today or I'm writing charges" (ECF no. 5) at 6; Defendant Merten allegedly giving preferential treatment as Plaintiff was denied a memo to attend an evening ILA class (ECF No. 5) at 6; Defendant Merten allegedly threatening Plaintiff that he would end up like Juan Turner because he provided an unfavorable statement against him (ECF No. 5) at 12; and Defendant Merten allegedly causing Plaintiff to be fired (ECF No. 5) at 12-13; and denying

Plaintiff access to the law library along with printed and photocopied materials. *See* (ECF No. 5) at 5.

The New Jersey District Court has held that "mere words do not constitute retaliation." *Martin v. Campus*, 2025 U.S. Dist. LEXIS 145763, *20 (D.N.J. 2025). Clearly, Plaintiff is suing Defendant Merten for mere statements – that Plaintiff was on "his shit list," or stating he "would end up like Turner." *See* Amended Complaint (ECF No. 5) at 4,6, &12. These words spoken by Defendant Merten, with no other plausibly alleged action, could hardly prevent a person of ordinary firmness from exercising their First Amendment rights. Likewise, Plaintiff's allegation that he was fired from being an ILA paralegal, or denied access to his evening ILA class, is conclusory and does not plead any facts suggesting that Merten was the cause; in fact, Plaintiff later pleads that Defendant Bodtmann informed Plaintiff he took Plaintiff's CCU access. *See* Amended Complaint (ECF No. 5), ¶13. Moreover, Plaintiff pleads he did not attend his evening ILA session on 9/16-9/19/24 out of fear from being retaliated against by Defendant Merten. *See* Amended Complaint (ECF No. 5) at 9. Thus, by Plaintiff's own allegations, Defendant Merten did not stop Plaintiff from attending these classes – instead, it was Plaintiff's own decision to not attend.

## B. PLAINTIFF HAS NOT SUFFERED AN ADVERSE ACTION FROM DEFENDANT BODTMANN.

Plaintiff alleges in Count Four that Defendant Bodtmann rescinded Plaintiff's CCU access for speaking with reporters about RHU units within New Jersey State Prison. *See* Amended Complaint (ECF No. 5) at 15. Plaintiff further alleges that Defendant Bodtmann denied Plaintiff's job on December 4, 2024, because of the complaint he lodged against Dan Williams and was then transferred to a facility three weeks later. *Id*. Defendant Bodtmann rescinding CCU access and transferring Plaintiff to a different facility could hardly prevent a person of ordinary firmness from exercising their First Amendment rights.

The Third Circuit has recognized adversity where the alleged retaliation included a transfer to a distant prison where his family could not visit him often and was penalized financially. *Rauser v. Horn*, 241 F.3d 330, 333 (3d. Cir. 2001). By contrast, the Third Circuit will dismiss claims for a failure to plead adverse action, when a Plaintiff does "not allege how the prison transfer was an adverse action, i.e. one that would be sufficient to deter a person of ordinary firmness from exercising his rights." *Collazo v. Rozum*, 646 Fed. Appx. 274, 276 (3d. Cir. 2016) (citing *Allah v. Seiverling*, 229 F.3d 220, 225)).

Here, Plaintiff alleges only that he was "abruptly transferred" to South Woods State Prison ("SWSP") three weeks after his job denial, with no nonconclusory facts

describing why that transfer would deter a person of ordinary firmness from exercising his rights or any actual consequences. *See Id.* As stated, in *Soto v. New Jersey*, Plaintiff has not "provided any facts showing that the transfer from NJSP to SWSP constitutes an adverse action." *Soto v. New Jersey*, 2020 U.S. Dist. LEXIS 87657, *15 (D.N.J. 2020) (citing *Collazo v. Rozum*, 646 F. App'x. 274, 276 (3d Cir. 2016) (affirming dismissal of prisoner's First Amendment retaliation claim where he failed to explain how prison transfer was an adverse action) (citing *Allah*, 229 F.3d at 225)). The same applies to Plaintiff in the present case. Further, Plaintiff has not pleaded any consequences similar to those in *Rauser*. Plaintiff merely emphasizes his "abrupt" transfer to SWSP. Therefore, Plaintiff's allegations of suffering an adverse action from Defendant Bodtmann are insufficient.

### C. EVEN IF PLAINTIFF SUFFERED AN ADVERSE ACTION, THERE IS NO CAUSAL LINK BETWEEN THAT ACTION AND HIS PROTECTED CONDUCT.

Even if Plaintiff has suffered an adverse action, he cannot show that the adverse action was caused by protected conduct. This is because "[a] defendant may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

The lapse of time between the alleged constitutionally protected conduct and adverse action also defeats the Plaintiff's attempted retaliation claim. "Courts have

held that temporal proximity causation is a high burden that requires the adverse action to occur 'within a few days of the protected activity.'" *Smart v. Cty. of Gloucester*, 681 F. Supp. 3d 306, 333 (D.N.J. 2023) (quoting *El-Sioufi*, 887 A.2d at 1188). Though "mere passage of time is not legally conclusive proof against retaliation… the passage of a long period of time between protected activity and an alleged retaliatory action weighs against a finding of a causal link where there is no evidence of retaliatory animus during the intervening period." *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000). In *Smart*, for example, the court found no temporal proximity could be inferred when it took months, or "perhaps a year" for the alleged retaliatory act to take place. *Smart v. Cty. of Gloucester,* 681 F. Supp. 3d 306, 333 (D.N.J. 2023).

The Third Circuit has held "to establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d. Cir. 2007) (citing *Krouse v. American Sterilizer Co*., 126 F.3d 494, 503-04 (3d Cir. 1997); *Woodson v. Scott Paper Co*., 109 F.3d 913, 920-21 (3d Cir. 1997)). In addition, the Court held, "in the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of

the fact should infer causation." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (citing *Farrell v. Planters Lifesavers Co*., 206 F.3d 271, 281 (3d Cir. 2000)).

In addition, the Third Circuit has also held, "a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d. Cir. 2007) (citing *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (citing favorably *Richmond v. ONEOK, Inc*., 120 F.3d 205, 209 (10th Cir.1997), which rejected such an inference where the events were three months apart); *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (five-month time period between employee's complaint and first adverse action was, without additional evidence, insufficient to raise an inference of causation)).

In this case, Plaintiff states he was featured in an article published by the New Jersey Monitor speaking about the ills of RHU within NJSP in October 2023. *See* Amended Complaint (ECF No. 5) at 3. Plaintiff then states that Defendant Bodtmann rescinded his CCU access in January 2024, three months after Plaintiff was featured in the article. (ECF No. 5) at 3. Plaintiff also alleges in his Amended Complaint that he had a discussion with Defendant Bodtmann in March of 2024 pertaining to Plaintiff's CCU status. *Id*. at 4. In this discussion, Defendant Bodtmann allegedly told Plaintiff that the officers were not fond of the article and he wanted to limit paralegals with CCU access, while making gestures to hint that Plaintiff may be the

reason. *Id*. Further, Plaintiff was allegedly told his CCU access would be limited the following day when another ILA paralegal was granted CCU access. *Id*.

According to Plaintiff's own timeline, the alleged protected activity occurred in October 2023 (the New Jersey Monitor article) and Plaintiff alleges Defendant Bodtmann rescinded Plaintiff's CCU access in January 2024, which is approximately three months later. *See* Amended Complaint (ECF No. 5) at 3. Plaintiff further alleges he had a discussion with Defendant Bodtmann regarding CCU status in March 2024, approximately five months after the article, during which Plaintiff learned his CCU access would be limited. *Id*. at 4. Similar to *Smart*, the Court should find that no temporal proximity can be inferred when it took months for the alleged retaliatory act of restricting Plaintiff's CCU access to occur. *See Smart v. Cty. of Gloucester*, 681 F. Supp. 3d 306, 333 (D.N.J. 2023); *El-Sioufi*, 887 A.2d at 1188.

Plaintiff also alleges that Defendant Bodtmann denied Plaintiff's job on December 4, 2024, because of the complaint he lodged against Dan Williams. *See* Amended Complaint (ECF No. 5) at 15. Plaintiff states in his Amended Complaint that his complaint against Dan Williams was served on December 3, 2024. *Id.* at 10. Plaintiff states he was denied by Classification for his ILA paralegal job on December 4, 2024. *Id*. at 11. Plaintiff states that at or around December 11, 2024, Defendant Bodtmann was aware of the complaint filed against Dan Williams. *Id*.

Plaintiff also states he was transferred to South Woods State Prison on December 31, 2024. However, Plaintiff has stated previously that he was already fired from being an ILA paralegal earlier in September. *Id*. at 8. It appears that Plaintiff is attempting to use his complaint against Dan Williams as a basis to prove retaliation by Defendant Bodtmann. Additionally, Plaintiff's transfer to South Woods Prison occurred three weeks after Defendant Bodtmann allegedly becoming aware of Plaintiff's complaint against Dan Williams. Therefore, there is no temporal proximity that can be inferred from Bodtmann's actions relating to Plaintiff being fired as an ILA paralegal or his transfer to a different facility.

Plaintiff attempts to use alleged spoken words from Defendant Merten as a basis to prove that Plaintiff's rights were violated from his lack of law library access, ILA class, and being fired as an ILA paralegal. Defendant Merten denied Plaintiff from attending his evening ILA class on September 23, 2024, because Defendant Merten did not have a memo for Plaintiff to attend. (ECF No. 5) at 9. Defendant Merten was acting within the scope of his duties to deny Plaintiff access if he did not have a memo for his attendance, regardless of what words were spoken prior.

Plaintiff alleges that in March 2024, the same month where he had his discussion with Defendant Bodtmann and later learned his CCU access would be limited, Defendant Merten falsified reports in the form of institutional infractions on Plaintiff's co-worker, Juan Turner. *See* Amended Complaint (ECF No. 5) at 4.

Following this, Plaintiff provided a statement on behalf of Turner which allegedly led to Defendant Merten telling Plaintiff "He was on his shit list." *Id*. On September 12, 2024, Defendant Merten denied Plaintiff from attending his evening ILA class that day and allegedly told Plaintiff, "Play like me and you will end up like Turner" (referencing Juan Turner). *Id*. at 7. Plaintiff's basis for Defendant Merten's retaliation stems from Plaintiff's remarks about Juan Turner that occurred in March of 2024, around *seven months* before he was denied access to his evening ILA class by Defendant Merten and fired from being an ILA paralegal around that time. The passage of seven months of time does not support a temporal proximity of Defendant Merten's alleged retaliatory action, regardless of the alleged comments made by Defendant Merten. Therefore, the Court should find that no temporal proximity can be inferred when it took months for the alleged retaliatory act to occur by Defendant Merten.

## POINT III

## PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

"To state a claim under the Equal Protection Clause, a plaintiff must allege that (1) he is a member of a protected class; (2) that he was treated differently from similarly situated individuals; and (3) that this disparate treatment was based on his or her membership in the protected class." *Kaul v. Christie*, 372 F. Supp. 3d 206, 254

(D.N.J. 2019) (citing *Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 214-15 (3d Cir. 2013) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)). A bare allegation that a person believes that race or nationality was a factor in the issue at hand is not enough. *Kaul v. Christie,* 372 F. Supp. 3d 206, 254. Even assuming disparate impact has been alleged is not sufficient to meet the threshold of purposeful discrimination. *Id*. citing *Washington v. Davis*, 426 U.S. 229, 248, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976).

Although Plaintiff pleads several facts related to his race, his complaint fails to state an Equal Protection Claim because it does not indicate any action taken was due to race. Plaintiff alleges that "all ILA paralegals are African Americans," but he does not allege facts showing Defendants treated the ILA paralegals differently due to their race. *See* Amended Complaint (ECF No. 5) at 14. Instead, Plaintiff only pleads that Defendant Merten made comments towards Plaintiff's ethnicity and compared him to Kamala Harris as being unfit because of his race, and generally spoke to Plaintiff and other ILA members in a hostile manner or limited the paralegals' acts. *Id*. As a result, Plaintiff does not plausibly allege that he was treated differently from any similarly-situated individuals, nor does he adequately allege any disparate treatment he received was based on his race. *See Kaul v. Christie*, 372 F. Supp. 3d 206, 254.

Plaintiff attempts to satisfy the similarly situated and disparate treatment elements by alleging that two white law library paralegals received preferential treatment. *See* Amended Complaint (ECF No. 5) at 6. Plaintiff states "these inmates are similarly situated to Plaintiff" because "although Plaintiff is in ILA paralegal" they purportedly share "the same job functions, yet only white law library paralegals are allowed to access the law library, printed materials, photocopied materials, legal phone calls." *Id*. Even accepting these allegations as true, this is still not enough to plausibly plead an Equal Protection Claim. "Persons are similarly situated under the Equal Protection Clause when they are alike "in all relevant aspects."" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d. Cir. 2008) (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992)). "Absent specific allegations as to the allegedly similarly situated parties, he has not made plausible the conclusion….. that they are like him in all relevant aspects." *Vamsidhar Reddy Vurimindi v. City of Philadelphia*, 521 Fed. Appx. 62, 66 (3d. Cir. 2013).

Plaintiff's comparisons to the white law library paralegals are not pleaded with enough specificity to show they are similarly situated in all relevant aspects, and the differential treatment described is consistent with program/job-based access rather than purposeful discrimination based on race. *See Kaul v. Christie*, 372 F. Supp. 3d 206, 254, *Washington v. Davis*, 426 U.S. 229, 248 (1976). Furthermore, Plaintiff's own allegations describe access distinctions that relate to different job

roles, not race. Plaintiff alleges Mr. Deroses and Mark Kennon are law library paralegals, and the preferential treatment he identifies is law library access and law library resources. *See* Amended Complaint (ECF No. 5) at 6. Those allegations do not plausibly show that plaintiff was denied access because of race, as required to plead purposeful discrimination under the Equal Protection Clause. *See Kaul v. Christie*, 372 F. Supp. 3d 206, 254; *Washington v. Davis*, 426 U.S. 229, 248 (1976).

In *Deejaz*, the Court granted Defendant's motion to Dismiss Plaintiff's Equal Protection claim. *Deejaiz LLC v. Twp. of Franklin*, 2025 U.S. Dist. LEXIS 169473, *12 (D.N.J. 2025). In that case, Plaintiffs are an African-American/Minority Owned business that hosted various social events, and Defendants are the Township and its officials. *Id* at 2. The Township's Fire Prevention Department "issued a Notice of Imminent Hazard and Order to Take Corrective Action, which required that Plaintiffs "cease operations/events" at the premises by noon that same day. *Id*. at 3. Plaintiffs discovered a similarly situated non-minority owned entity which they alleged received favorable treatment. *Id.* at 4-5.

Plaintiff's claims did not meet the third element of a claim under the Equal Protection Clause because Plaintiff failed "to adequately allege that the disparate treatment they received was based on race." *Id*. at 11. Plaintiff had alleged that the Township's actions were indicated by a Boogie Nights event flyer which indicated that an inspection was "based on racially stereotypical assumptions." *Id*. The Court

in *Deejaiz* noted that Plaintiff's allegations were conclusory and the Court could not draw a reasonable inference of racial discrimination. *Deejaiz LLC v. Twp. of Franklin*, 2025 U.S. Dist. LEXIS 169473, *11 (2025) (citing *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level."); *In re Johnson & Johnson Talcum Powder Prods. Mtkg., Sales Pracs. & Liability Litig*., 903 F.3d 278, 281 (3d Cir. 2018) (finding that at the motion to dismiss stage, a "plaintiff must. . . allege facts that would permit a factfinder to determine, without relying on mere conjecture," that a plaintiff's allegations can successfully state a claim). Further the Court held, "where the underlying allegations are based "merely upon [the plaintiff's] own suspicion and speculation," the Third Circuit has dismissed such claims." *Deejaiz LLC,* 2025 U.S. Dist. LEXIS 169473, at 12 (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)).

The present case is no different to *Deejaiz* with respect to Plaintiff's discrimination claims. Plaintiff assumes that alleged comments made by Defendant Merten contributed to his revocation of ILA employment and access to ILA classes. However, as mentioned above, where underlying allegations are based merely upon speculation, claims have been dismissed by the Third Circuit.

Further, Plaintiff's allegation of believing his race was a factor to Defendant Merten's alleged actions and disparate impact is not enough to show purposeful discrimination. *See Kaul v. Christie*, 372 F. Supp. 3d 206, 254, *Washington v. Davis*,

426 U.S. 229, 248 (1976). Similar to *Deejaz*, Plaintiff's allegations of favorable treatment based on race are conclusory. The differences in privileges Plaintiff alleges is based on different jobs/programs and is not due to race. Therefore, Plaintiff's discrimination claims against Defendant Merten should be dismissed.

## POINT IV

## COUNT FIVE FAILS TO STATE A CLAIM UNDER THE FIRST OR FOURTEENTH AMENDMENT

Count IV should be dismissed because an alleged failure or delay in responding to inmate grievances does not implicate a federally protected right under Section 1983 claims.

The Third Circuit has held that prisoners do not have constitutional rights to a prison grievance system. The Third Circuit in *Simonton v. Tennis* held, "access to prison grievance procedures is not a constitutionally-mandated right." *Simonton v. Tennis*, 437 Fed. Appx. 60, 62 (2011) (citing *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 138, 97 S. Ct. 2532, 53 L. Ed. 2d 629 (1977) (Burger, C.J., concurring) ("I do not suggest that the [prison grievance] procedures are constitutionally mandated"); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases). Further, the Third Circuit in *Heleva v. Kramer* held that "defendants' alleged obstruction of prison grievance procedures does not give rise to an independent claim. Prisoners do not have a constitutional right to prison grievance procedures." *Heleva v. Kramer*, 214 Fed. Appx. 244, 247 (2007) (citing *Massey v. Helman*, 259

F.3d 641, 647 (7th Cir. 2001)). Accordingly, Plaintiff's allegation that grievances and appeals "became overdue" and took "almost two months to respond" without more fails as a matter of law to plead a First or Fourteenth Amendment violation.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against Moving Defendants should be dismissed with prejudice.

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By: s/ Angelo Cifelli
Angelo Cifelli
Deputy Attorney General

Dated: December 26, 2025